IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RITA SANDOVAL,

          Plaintiff,

v.

                                      CIV 13-0751 KBM

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

          Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Plaintiff's Motion to Reverse or

Remand Administrative Agency Decision (*Doc. 17*) filed on May 5, 2014, and fully

briefed July 21, 2014.  Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the

parties have consented to me serving as the presiding judge and entering final

judgment.  *Doc. 8.*  Having carefully reviewed the parties' submissions and the

administrative record, the Court will deny the motion to remand and dismiss this action

with prejudice.

## I.     Background and Procedural History

Plaintiff is a 52-year old, homeless woman who is educated through the 11th

grade.  AR 53, 54.[1]  Plaintiff has nine children that do not live with her.  AR 54.  Plaintiff

has a long history of alcoholism, marijuana, and peyote use.  AR 335, 336, 337, 340,

341, 383, 384, 447, 465, 556.  She has previously worked as a salvage sorter at a

---

[1] Documents 14-1 through 14-22 comprise the sealed Administrative Record ("AR").  When citing the record, the Court cites the AR's internal pagination, rather than the CM/ECF document number and page.

recycling center and a housekeeper.  AR 59, 67, 68.

Plaintiff applied for supplemental security income on January 15, 2010, alleging disability since December 30, 2009, due to a head injury, migraine headaches, arthritis, and bipolar disorder.  AR 201, 219.  After Plaintiff's applications were denied initially and upon reconsideration, she requested a hearing before an administrative law judge ("ALJ"), which took place before ALJ Michelle Lindsay on September 7, 2011.  AR 47, 104-107, 114-16, 117-120, 121-23.

The ALJ issued her decision on March 15, 2012.   AR 29-42.  Utilizing the five-step sequential evaluation process[2], the ALJ found:  at Step One, Plaintiff was not engaged in substantial gainful activity; at Step Two, Plaintiff had severe impairments, including migraine headaches, chronic hepatitis C, coccydynia,[3] major depression, borderline intellectual functioning, an alcohol-induced mood disorder, post-traumatic stress disorder, and a history of polysubstance abuse (AR 32); and at Step Three, these impairments, including the substance use disorders, meet the listings set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d)). The ALJ found that if

---

[2] Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520. Step One requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510.  Step Two requires that the claimant establish that she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities.  20 C.F.R. § 404.1520(C).  If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied.  At Step Three, the claimant's impairment is compared with certain impairments listed in 20 D.F.R. Pt. 404, Subpt. P, App. 1 ("Listings"). A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry.  If the claimant does not meet a listing, the evaluation proceeds to Step Four, where the claimant must establish that she does not retain the residual functional capacity ("RFC") to perform her past relevant work.  If the claimant's Step-Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account her age, education, work experience, and RFC, can perform.  *Dikeman v. Halter*, 245 F.3d 1182, 1183 (10th Cir. 2001). Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work.  20 C.F.R. § 404.1520.

[3] Coccydynia describes the pain and discomfort resulting from an injury to the tailbone (coccyx).  www.webmd.com/fitness-exercise/tailbone-coccyx-injury.

Plaintiff stopped the substance use, while she would continue to have severe impairments, they would not meet any of the listed impairments. AR 33. At Step Four, the ALJ found that if Plaintiff stopped the substance use, she would have the residual functional capacity ("RFC") to perform medium work with some exertional and nonexertional limitations, and that she would be able to perform past relevant work. AR 34-35, 39. At Step Five, the ALJ found that if Plaintiff stopped the substance use, there were jobs existing in significant numbers in the national economy that Plaintiff could perform. AR 40. The ALJ expressly found that Plaintiff's "substance use disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if she stopped the substance use." AR 41. Accordingly, the ALJ concluded Plaintiff was not disabled within the meaning of the Social Security Act. AR 42. Plaintiff's request that the Appeals Council review the unfavorable decision was denied leaving the ALJ's decision as the final decision of the Commissioner. AR 1-4.

## II.    **The Claims**

Plaintiff asserts the following claims of error by the ALJ:  (1) finding that Plaintiff could work if she abstained from substance use; (2) finding that she could perform the mental functions that work requires on a sustained basis;  (3) finding that she retained the RFC to perform past relevant work; and (4) improperly relying on the vocational expert's ("VE") testimony.  *Doc. 17* at 4, 25-26; *Doc. 19* at 7-10.

## III.    **Standard of Review**

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) to two inquiries: first, whether the decision was supported by substantial evidence; and second, whether the correct legal standards were applied.  *Hamlin v.*

*Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).

> Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. However, "[a] decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."

*Id.* (quoting *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) and *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir.1988)) (brackets in original).

The Court's review is based on the record taken as a whole, and the Court will "meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking 'into account whatever in the record fairly detracts from its weight.'" *Id.* (quoting *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)).  This Court may not reweigh the evidence nor substitute its opinion for that of the Commissioner.  *Id.* at 1214.

## IV.    Discussion

### A.    The ALJ's Finding that Plaintiff's Substance Use is a Contributing Factor Material to the Determination of Disability.

When a claimant suffers from alcoholism or drug addition, the ALJ must first determine whether the claimant is disabled and then determine whether the alcoholism or drug addiction is a "contributing factor material to the determination of disability." 20 C.F.R. § 416.935(a); *see also Drapeau v. Massanari*, 255 F.3d 1211, 1214-15 (10th Cir. 2001).  The key factor in determining whether alcoholism or drug addiction is a contributing factor material to the claim "is whether the Commissioner would still find the claimant disabled if he or she stopped using drugs or alcohol."  *Drapeau*, 255 F.3d at 1214 (citing 20 C.F.R. § 416.935(a)); *see also* 20 C.F.R. 404.1535(b)(1).  In making this determination, the ALJ must evaluate which of the claimant's physical and mental

limitations would remain if the claimant stopped the substance use and then determine whether those remaining limitations are disabling.  *Drapeau*, 255 F.3d at 1214 (citing 20 C.F.R. § 416.935(b)(2)); 20 C.F.R. 404.1535(b)(2).  When the remaining limitations are disabling, a finding of disability is appropriate.  20 C.F.R. § 416.935(b)(2)(ii); 20 C.F.R. 404.1535(b)(2)(ii).  On the other hand, if the remaining limitations are not disabling, the substance use is a "contributing factor material to the determination of disability," and the claimant is not "disabled" as defined in the Social Security Act.  *Drapeau*, 255 F.3d at 1215 (citing 20 C.F.R. § 416.935(b)(2)(i)); 20 C.F.R. 404.1535(b)(2)(i).

In this case, ALJ Lindsay concluded that Plaintiff's "substance use disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if she stopped the substance use."  AR 41.  Plaintiff contends this conclusion is not supported by substantial evidence because the ALJ relied solely on consulting physician Dr. Ortiz's conclusions which, she submits, "are contrary to all of the other evidence of record, most from treating sources."  *Doc. 17* at 8.

The "treating sources" to which Plaintiff refers, LISW[4] Apodaca and LPCC[5] Harter, are not "treating physicians" whose opinions are generally entitled to controlling weight, *Hackett v. Barnhart*, 395 F.3d 1168, 1174 (10th Cir. 2005),  but are instead

---

[4] On 7/24/14, the New Mexico Regulation & Licensing Department changed the title of LISW (Licensed Independent Social Worker) to LCSW (Licensed Clinical Social Worker) effective 9/1/14.  That change, however, is merely a name change and there have been no changes to the scope of practice or requirements for licensure.  http://www.rld.state.nm.us/boards/Social_Work.aspx; 16.63.1 et seq., N.M.A.C.

[5] Licensed professional clinical mental health counselor (LPCC). 16.27.4.N.M.A.C.; http://164.64.110.239/nmac/parts/title16/16.027.0004.htm (setting out the requirements for licensure as a professional clinical mental health counselor).

"other sources."[6]  Information from other sources "may provide evidence 'to show the

severity of [a claimant's] impairment(s) and how it affects [a claimant's] ability to work,"

*Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir. 2007) (quoting  20 C.F.R. §

404.1513(d)), but cannot establish the existence of a medially determinable impairment,

or provide medical opinions,[7] which are duties solely within the purview of "acceptable

medical sources."  *Frantz*, 509 F.3d at 1301 (citing 20 C.F.R. § 404.1527(a)(2)); *see*

*also*, 20 C.F.R. § 404.1513(a); 20 C.F.R 416.913(a)(1) and (2).  However, the factors for

weighing opinions of acceptable medical sources set out in the regulations apply with

equal force to "other source" opinions.[8]  *Frantz,* 509 F.3d at 1302; *see also*, Social

Security Ruling (SSR) 06-03p.  Accordingly, an ALJ must explain the weight she has

given to the "other source" opinions such that her discussion in the decision allows the

claimant and any subsequent reviewer to follow her reasoning.  *Frantz,* 509 F.3d at

1302 (citing SSR 06-03p).

---

[6] "Other sources," as opposed to "Acceptable Medical Sources" include, but are not limited to, nurse practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists.  20 C.F.R. § 404.1502(a); 20 C.F.R. § 404.1513(a).  "Acceptable medical sources" are licensed medical or osteopathic doctors, licensed or certified psychologists, licensed optometrists, licensed podiatrists and qualified speech-language pathologists. 20 C.F.R. § 404.1513(a).

[7] A "medical opinion" is a statement that reflects judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, prognosis, what they can still do despite any impairments, and any physical or mental restrictions.  20 C.F.R. 404.1527(a)(2).

[8]  Those factors include:

    (1) the length of the treatment relationship and the frequency of examination;
    (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
    (3) the degree to which the physician's opinion is supported by relevant evidence;
    (4) consistency between the opinion and the record as a whole;
    (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
    (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (citation omitted).

Plaintiff contends that the ALJ's "reasons for discounting the treating source opinions were not valid." *Doc. 19* at 2. ALJ Lindsay gave "no weight" to Apodaca's diagnosis or to his "unsupported statement regarding [Plaintiff's] function if she stopped drinking" because, she explained, Apodaca is not an "acceptable medical source." AR 38. Apodaca stated that Plaintiff has a "cognitive functioning problem probably due to her drinking" and opined that "[a]t this point, even if she quit drinking she would have a cognitive functioning problem that medication will not help." AR 386. Whether Plaintiff has a "cognitive functioning problem" constitutes a medical determination. In order to establish a medically-determinable mental impairment, there must be evidence from an acceptable medical source using medically-acceptable clinical and laboratory diagnostic techniques. *See* 20 C.F.R. §§ 404.1508, 404.1513, 416.908, 416.913. Because Apodaca does not qualify as an acceptable medical source, his opinions are insufficient to establish a medical condition or give a prognosis.

The ALJ gave "little weight" to Harter's assessment that Plaintiff meets the requirements of listings for mental impairments, noting that, in addition to not being an acceptable medical source, Harter's opinion was based on only two visits,[9] which took place nine months apart, and while Plaintiff was still using alcohol on a daily basis. AR 39. The ALJ also found Harter's assessment was not consistent with her narrative treatment records. *Id*. These articulated reasons provide adequate support for the weight given to Plaintiff's "other source" opinions.

Moreover, in cases involving the determination of whether alcohol and drug use is a contributing factor, the ALJ should carefully examine periods of abstinence,

---

[9] Plaintiff argues that although Harter only treated Plaintiff at two sessions, she also "was privy to numerous records from other providers" at Healthcare for the Homeless. There is no evidence in the record, however, that Harter had access to, or reviewed, "numerous records from other providers."

including its length, how recently it occurred, and any changes in limitations of other mental impairments since the last period of abstinence. *Salazar v. Barnhart*, 468 F.3d 615, 623 (10th Cir. 2006) (referencing the Commissioner's teletype regarding the application of 20 C.F.R. 416.935(a) and (b)).

Apodaca's and Harter's examinations of Plaintiff came at times when she was consuming alcohol on a daily basis.  AR 383-386, 447, 465.  Harter found Plaintiff to have extreme deficiencies in concentration, persistence or pace, and marked limitations in understanding, memory, the ability to maintain attention, work with others, interact with the general public, and complete a normal work-day.  AR 494-496.  Apodaca opined that Plaintiff was unable to handle financial affairs, return to work, or live independently.  AR 385.  Plaintiff reported to both Apodaca and Harter that she suffered from audio and visual hallucinations.  AR 383, 386, 489,

On the other hand, Plaintiff's primary care provider, Dr. Rogers, expressly noted that Plaintiff was doing well, feeling good, and was stable after a three-month period of sobriety.  AR 467.  Similarly, consultative examining psychiatrist Dr. Ortiz found that after three months of abstention, Plaintiff's memory was "good," she was only  "mildly limited as evidenced by mood, energy, and sleep disturbance," and was "the most stable she has been in her life."  AR 341-343.  Indeed, she reported to Dr. Ortiz with a "big smile" that she was "doing pretty good not drinking."  *Id.*  Also at a time of abstinence, Dr. Loescher determined that Plaintiff's cognitive functioning, while limited, was such that she was "able to understand, remember and follow through on basic work instructions."  AR 559.  Plaintiff also reported having no auditory or visual hallucinations or psychotic or delusional thinking during these periods of abstinence.  AR 342, 556.

Drs. Loescher and Ortiz also agreed that Plaintiff was capable of handling her own finances.  AR 342, 559.

In sum, the evidence is not contradictory, but suggests that Plaintiff's functioning significantly improves when she abstains from alcohol or other drugs.  Accordingly, the ALJ's finding that Plaintiff's substance use is a contributing factor material to the determination of disability is supported by substantial evidence.

**B.    The ALJ's RFC.**

Plaintiff argues that evidence from treating and examining sources shows that Plaintiff's mental limitations are greater than described by the ALJ's RFC.  *Doc. 17* at 15-20.  The ALJ found that:

> If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c)  except that she would be able to lift and/or carry no more than 50 pounds occasionally and 25 frequently; push and/or pull no more than 50 pounds occasionally and 25 frequently; sit about 6 hours total during an 8 hour workday; stand and/or walk about 6 hours total during an 8 hour workday; occasionally climb ladders, ropes, and scaffolds; limited to understanding, remembering, and carrying out only short, simple instructions, not detailed or complex instructions; able to maintain attention and concentration to perform simple, one-to-two step tasks for two hours at a time without requiring redirection to task; requires work that involves no more than occasional changes in the routine work setting; cannot perform production pace work (that is, assembly line pace); and requires work that does not involve more than superficial interactions with supervisors.

AR 34-35.

### 1. Concentration Persistence and Pace

"Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings."  *Stokes v. Astrue*, 274 F. App'x

675, 680 (10th Cir. 2008) (quoting 20 C.F.R. § Pt. 404, Subpt. P, App. 1(C)(3)).  ALJ

Lindsey gave "significant weight" to Dr. Chiang's opinion that Plaintiff "can understand,

remember, and carry out simple instructions, make simple decisions, [and] attend and

concentrate for two hours at a time," AR 415, which the ALJ incorporated into Plaintiff's

RFC.  AR 34.

  Plaintiff complains that according "significant weight" to the opinion of Dr. Chiang,

the reviewing state agency psychiatrist, is contrary to substantial evidence.  *Doc. 17* at

15.  Plaintiff cites to the evaluation and testing performed by Dr. Loescher noting that

Plaintiff's low scores during testing should lead to the conclusion that "Ms. Sandoval's

impairment in concentration, persistence, and pace, is at least marked."  *Doc. 17* at 15-

16.  However, Dr. Loescher found that in spite of her low test scores, Plaintiff would be

able to "understand, remember and follow through on basic work instructions."  AR 559.

This conclusion is based on Plaintiff's short term and working memory subtests and is

consistent with Dr. Chiang's assessment.  The ALJ also gave significant weight to the

opinion of Dr. Hesse, who examined Plaintiff in March of 2010, and opined that while

Plaintiff described having migraine headaches and some memory loss, "[i]t is my

impression the patient is able to work, nevertheless."  AR 337.

  Plaintiff notes that Dr. Hesse may not have accessed Plaintiff's medical records

where Plaintiff described headaches, anxiety, hallucinations, and other symptoms,

(*Doc. 17* at 16-17), but ALJ Lindsay **did** have access to those records.  Plaintiff does

not object to the ALJ's evaluation of Plaintiff's credibility regarding these symptoms.  For

example, the ALJ found that "the treatment records do not support the claimant's

allegations as to the frequency and severity of headaches," (AR 36), and that Plaintiff

took her anxiety and depression medications infrequently suggesting that she was not experiencing the intensity and frequency of those symptoms as well (AR at 38).  It was not necessary for Dr. Hesse to rely on other medical records because he could draw his conclusions based on his own objective tests and observations.

Plaintiff further argues that the ALJ "improperly diminished or disregarded . . . opinions from [her] treating providers who were familiar with her during the relevant time period." *Doc.* 17 at 17.  This argument is without merit.  First, like Dr. Ortiz, Dr. Hesse examined Plaintiff in March of 2010, during a period of abstinence unlike Apodaca and Harter who saw her when she was consuming alcohol on a daily basis.  The "relevant time period" is, therefore, different for Plaintiff's treating sources.  Second, as previously discussed, the ALJ properly weighed all of the opinions, and the Court will not reweigh the evidence.  The ALJ's RFC determination with respect to concentration, persistence, and pace is supported by substantial evidence.

### 2. *Interacting with co-workers and supervisors*

Plaintiff criticizes the ALJ for including "superficial interactions with supervisors" as the only social functioning limitation in Plaintiff's RFC.  *Doc. 17* at 19.  Plaintiff correctly notes that the vocational expert agreed that there can be a conflict within an RFC that includes a limitation to simple, one- to two-step tasks in the absence of a requirement that the worker be "closely supervised."  *Id.*  As the Commissioner points out, however, there was not such a conflict within the RFC as determined by the ALJ in this case.

At the hearing, Plaintiff's attorney asked:

> If someone can't deal with people to the extent of having work that required more than minimal supervision, ***but also can't remember***

**11**

> ***tasks for more than a couple of minutes or follow more than a
> one-step command***, there's something of an inconsistency there,
> isn't there, that if you can't remember what to do, you need direct
> supervision almost all the time?

AR 90.  The vocational expert agreed that would be a "one kind of conflict with

the hypothetical."  *Id.*  The record establishes, however, that when Plaintiff is not

using alcohol, she is able to complete one- to two-step tasks ***for two hours at a

time without requiring redirection to task***.  AR 34, 415.  As opposed to

counsel's question quoted above, ALJ Lindsay's hypothetical properly reflected

Plaintiff's found limitations, (AR 85), and there is no evidence that there is a

conflict within her hypothetical.

Next, Plaintiff argues the ALJ should have included a limitation with regard to

Plaintiff's ability to interact appropriately with the public and co-workers.  *Doc. 17* at 19-

20.  No evidence in the record suggests that, in the absence of substance use, any of

Plaintiff's impairments would prevent her from working with the public and co-workers.

Rather, Dr. Ortiz notes that Plaintiff's mood was stabilizing off alcohol (AR 39, 343) and

that "Ms. Sandoval is the most stable she has been in her life."  AR 343.  Dr. Chiang

specifically found that Plaintiff's ability to interact with the public and coworkers was not

significantly limited.  AR 414.  Consequently, it was not error for ALJ Lindsay to omit

limitations with respect to the public and co-workers from Plaintiff's RFC.

### 3.  Other limitations

Finally, Plaintiff asserts that the ALJ should have included a limitation in her RFC

that Plaintiff has "a marked impairment in her ability to complete a normal work day or

week without interruptions from psychologically based symptoms."  *Doc. 17* at 20.

This argument is also without merit.  The portions of the record cited by Plaintiff do not

support this proposition.[10]  Further, as Harter's opinions were formulated during a time when Plaintiff was drinking alcohol on a daily basis, the ALJ reasonably concluded that with abstinence, Plaintiff's ability to work is not as limited as Harter describes.

For the foregoing reasons, the ALJ's RFC does not contain legal errors and was supported by substantial evidence.

### C.    The ALJ's Past Work Finding at Step Four.

There are three phases of evaluation that an ALJ must complete at Step Four: first, the ALJ must determine a claimant's physical and mental RFC; second, she must determine the physical and mental demands of the claimant's past relevant work; third, she must determine whether the claimant has the ability to meet the job demands found in phase two despite the limitations found in phase one.  *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (citing *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996)).  Plaintiff claims errors at all three phases.

Plaintiff contends that the insufficient RFC renders the past work finding error. *Doc. 17* at 21.  As the Court has determined that ALJ Lindsay correctly evaluated Plaintiff's RFC, there is no error at phase one.

Plaintiff argues that the ALJ erred by not making specific findings at phase two with regard to the physical and mental demands of Plaintiff's past relevant  work.  *Doc. 17* at 21-22.  In support of her argument, Plaintiff cites to *Villalobos v. Colvin,* CIV 13-2005 (10th Cir. 2013) (unpublished).  The Court in *Villalobos* found that the ALJ failed to make findings with regard to job demands because she merely noted that the vocational

---

[10] The pages cited by Plaintiff regarding Dr. Loescher's findings, *Doc. 17* at 20, are Emergency Room Records from UNM Health Sciences Center (AR 285-89, 291) and do not consist of Dr. Loescher's report, which is found at AR 555-560.

expert testified that Villalobos could perform his past jobs and concluded that plaintiff could perform his past jobs as they had generally been performed.  *Doc. 17-1* at 9. While "[i]t is improper for an ALJ to make RFC findings and then to delegate the remaining phases of the step four analysis to the vocational expert, because the 'remainder of the step four analysis takes place in the VE's head' and 'we are left with nothing to review, . . ."[a]n 'ALJ may rely on information supplied by the VE at step four." *Doyal* 331 F.3d at 761 (quoting *Winfrey,* 92 F.3d at 1025).

In this case, the ALJ made detailed findings about the physical functions required for Plaintiff's past work.  For example, ALJ Lindsay found "[t]he claimant has past relevant work, which the vocational expert testified corresponds to scrap sorter/salvage laborer, [Dictionary of Occupational Titles ("D.O.T.")] No. 929, 687-022, which is medium exertional level,[11] SVP 2 unskilled work.[12]"  AR 39-40.  It is well established that an ALJ may accept the definitions in the D.O.T. as reliable evidence of the functional demands and job duties of a claimant's past job as it is usually performed in the national economy.  *Bowman v. Astrue*, 511 F.3d 1270, 1273 n.1 (10th Cir. 2008) (citations and quotations omitted); AR 188 (setting forth the description for LABORER/SALVAGE).  ALJ Lindsay established that Plaintiff's past work consisted of sorting plastic, glass, tin and boxes for recycling,  (AR 67-68), and explained Plaintiff performed this work eight hours a day, five days a week, for eight months.  AR 40. These findings are sufficient to establish the physical demands of Plaintiff's past work.

---

[11] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. § 404.1567(c).

[12] "Unskilled work" is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.  The job may or may not require considerable strength. 20 C.F.R. § 404.1568(a).

With regard to mental functions, *Winfrey* instructs:

> [A] VE may supply information to the ALJ at step four about the demand of the claimant's past relevant work.   For example, if the ALJ determines that the claimant's mental impairment affects his ability to concentrate, the ALJ may ask the VE for information about the level of concentration necessary to perform the claimant's past relevant work.

*Id.*, 92 F.3d at 1025.  Although the ALJ may rely on information supplied the vocational expert at step four, the ALJ must make the required findings on the record.  *Id.*

Plaintiff argues that the ALJ's conclusory statement in her decision is insufficient to satisfy the obligation to make specific findings regarding the mental demands of Plaintiff's past work.  *Doc. 17*.  When faced with a similar argument in *Doyal,* the Tenth Circuit held that the ALJ did not delegate his analysis to the vocational expert.  Rather, "he quoted the VE's testimony approvingly, in support of his own findings at phases two and three of the analysis.  There was nothing improper about this."  *Doyal*, 331 F.3d at 761.

ALJ Lindsay similarly used the vocational expert in this case.  The ALJ made specific findings with regard to Plaintiff's mental limitations based on medical evidence.  AR 34-35, 38 and 39.  At the hearing, the ALJ presented these limitations in a hypothetical to the vocational expert who agreed that a person who "would be able to maintain attention and concentration to perform only simple, one to two-step tasks for two hours at a time without requiring redirection to task, . . . would require work that involved no more than occasional change in the routine work setting . . . could not perform production based work . . . [and] did not require more than superficial interactions with supervisors" could perform Plaintiff's past work.  AR 85-87.  In her decision, ALJ Lindsay referenced this testimony stating "[t]he vocational expert testified

that an individual with the residual functional capacity set out above would be able to perform [her past relevant] work." AR 40.  It is clear from the record that ALJ Lindsay made the requisite findings with regard to both the physical and mental functions required for Plaintiff's past work and, as in *Doyal*, referred to the vocational expert's testimony in support of her own findings.  Therefore, Plaintiff has not established her burden at Step Four that she does not have the residual functional capacity to return to past relevant work.  Under these circumstances, the ALJ properly determined that Plaintiff is not disabled.

### D.    The ALJ's Findings at Step Five

"If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  Having found that the ALJ correctly determined that Plaintiff is not disabled at Step Four, it is unnecessary for the Court to address Plaintiff's claims at Step Five.

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Remand (Doc. 17) is denied and this matter will be dismissed with prejudice.

**IT IS FURTHER ORDERED** that a final order enter concurrently herewith.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE
Presiding by Consent

16